UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CATHERINE RODRIGUEZ, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Case No. 2:02 cv 254 |
| ) | |
| TRUMP CASINO and/or TRUMP ) | |
| INDIANA, INC., ) | |
| ) | |
| Defendants ) | |

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 36] filed by the defendant, Trump Casino, on April 6, 2004; the Third Motion for Extension of Time in Which to File a Sur-Response to Defendant's Motion for Summary Judgment [DE 63] filed by the plaintiff, Catherine Rodriguez, on October 29, 2004; and the Motion to Compel and/or Show Cause Why Deponent Should Not be Held in Contempt of Court and Extend Discovery [DE 84] filed by the plaintiff on November 10, 2008. For the following reasons, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, the Third Motion for Extension of Time in Which to File a Sur-Response to Defendant's Motion for Summary Judgment is **DENIED AS MOOT,** and the Motion to Compel and/or Show Cause Why Deponent Should Not be Held in Contempt of Court and Extend Discovery is **DENIED.**

### Background

This case arises from an injury incurred by Catherine Rodriguez, a dealer on a gaming boat owned by the defendant,

Trump Casino, as she was walking through the cafeteria provided for employee use. The cafeteria is in a land-based pavilion located between the Trump vessel and the Majestic Star Casino, another gaming vessel, and is cleaned, decorated, and managed by Buffington Harbor LLC. The Trump Casino offered its employees free meals and beverages in the cafeteria, as well as free parking and shuttle service which traveled to and from the cafeteria pavilion.

Rodriguez had punched out of her shift on the day of the injury and had gone to the cafeteria to catch the shuttle bus to the employee parking lot. She decided to have a soft drink there while awaiting the bus, and when she got up to cross the cafeteria to throw her cup away, she fell. Rodriguez described the fall as originating from something sticky or tacky on a floor mat which caused her to twist her ankle and fall over. Upon her first attempt to stand, Rodriguez fell a second time because of the tacky, grimy surface underfoot.

At the time of the injury, Indiana law prohibited casino vessels from being moored to the dock and required the boats at Buffington Harbor to cruise on Lake Michigan for two-hour intervals whenever weather permitted, even if only a very short distance from shore. On August 1, 2002, the Indiana Gaming Commission's resolution allowing gambling on moored casino boats took effect, and the Trump Casino boat began providing dockside gaming.

Rodriguez filed her original Complaint on June 20, 2002, seeking relief under the Jones Act and the maritime personal injury doctrines of maintenance and cure and unseaworthiness. The progress of the cause of action has been slow and sporadic for several reasons. The main interruption was the result of a stay for bankruptcy granted on December 2, 2004, later lifted on March 12, 2008. The secondary delay in the case is more elusive. This court's January 16, 2004 entry of the case management schedule set the deadline for all discovery as July 30, 2004.[1] Trump filed its Motion for Summary Judgment on April 6, 2004, to which Rodriguez responded after an extension of time on June 2, 2004. Rodriguez's counsel contemporaneously filed a Federal Rule of Civil Procedure 56(f) Affidavit stating: discovery still was proceeding and therefore, the motion for summary judgment was premature; the plaintiff had not had the opportunity to conduct discovery from Buffington Harbor; and the relationship between Buffington Harbor and Trump Casino and information about employees in cafeteria had not been attained. Based on this affidavit, the court on both July 13, 2004, and August 30, 2004, granted Rodriguez the opportunity to file a sur-response within ten days. Rodriguez filed what was titled "Plaintiff's Supplemental Brief in Opposition to Summary Judgment with Respect to the Issues of Subject Matter Jurisdiction and the Non-Applicability of *Howard v. Southern Illinois River Boat Casino Cruises, Inc.* Case to the

---

[1] This deadline was reaffirmed in the May 6, 2004 docket entry which noticed the reassignment of the case to the Magistrate Judge upon full consent of the parties.

Present Action" [DE 55] on September 10, 2004.[2]  Yet again on September 27, 2004, the deadline for filing a Sur-Response, Rodriguez filed another Motion for Extension of Time which the court granted two days later, before the opposition to such extension was filed by Trump.

In the opposition brief to the extension of time to file a sur-response, Trump points out that discovery in the case had been closed since July 30, 2004, and that Rodriguez had done nothing to reopen it.  Though the court had granted the extension without Trump's response, the effect was mooted by Rodriguez's failure to meet the sur-response deadline, and yet another motion for extension of time for a sur-response was filed on October 29, 2004.  Trump timely filed its objection, but the court never ruled on the plaintiff's motion due to the bankruptcy notice filed on November 29, 2004, which necessitated staying the case.

The case was reopened on March 12, 2008.  Shortly thereafter, Rodriguez filed a motion for leave to amend her Complaint which was granted on August 7, 2008.  The Second Amended Complaint added a more specific charge for maintenance and cure.

---

[2]The court on August 27, 2004, ordered the parties to brief the applicability of the April 9, 2004 ruling of the Seventh Circuit in the case *Howard v. Southern Illinois Riverboat Casino Cruises*, 364 F.3d 854 (7th Cir. 2004).  Trump filed its brief on the applicability of the case on September 14, 2004.  (*See* DE 57)  Although at first glance it appears that Rodriguez failed to respond to the court's order, perhaps this Supplemental Brief, which consists of 21 pages and contains all the elements of a full-blown response to a summary judgment motion, is the plaintiff's attempt at fulfilling the court's order concerning *Howard*, while also taking an extra bite out of the apple as to Trump's summary judgment motion.  Only page 19 discusses *Howard.*.

Because of the delay caused by the bankruptcy proceedings and the filing of the Second Amended Complaint, on October 24, 2008, the court offered the parties the opportunity to supplement their briefs on the pending summary judgment motion, but neither party took advantage of this option. Rather, Rodriguez filed a Motion to Compel and/or Show Cause Why Deponent Should Not Be Held in Contempt of Court and Extend Discovery [DE 84] on November 10, 2008, which asks the court to compel production requests subpoenaed from Buffington Harbor in 2008, after the stay was lifted, or in the alternative, hold the employee in contempt. As a final alternative prayer, Rodriguez requested "additional time in which to file a supplemental response to Defendant's Motion for Summary for [sic] Judgment." (Pltf. Mot. to Compel, DE 84, pp. 5-6) Despite the title of this motion, it contains no prayer for a reopening or belated extension of discovery in this matter.

Discussion

To begin, the Plaintiff's Third Motion for Extension of Time in Which to File a Sur-Response to Defendant's Motion for Summary Judgment [DE 63] filed on October 29, 2004, is **DENIED AS MOOT** for two reasons. First, in filing her Supplemental Brief in Opposition to Summary Judgment with Respect to the Issues of Subject Matter Jurisdiction and the Non-Applicability of *Howard v. Southern Illinois River Boat Casino Cruises, Inc.* Case to the Present Action [DE 55], Rodriguez seized the opportunity to argue against summary judgment once again rather than limit the brief to the topic requested by the court. Second, the court offered Rodri-

guez three occasions to file sur-responses on July 13, 2004, August 30, 2004, and October 24, 2008, but she filed nothing. Rodriguez's repeated requests for more time were granted, giving her ample opportunity to supplement her opposition to summary judgment. Because the motion to file sur-response was pending in 2004 before the stay and the court in October 2008 gave Rodriguez permission to supplement the summary judgment briefing, the motion was effectively granted and is now moot.

Next, the policy which has been followed by the Northern District of Indiana for more than 20 years applies to Rodriguez's compound motion to compel filed in November 2008, after the stay was lifted:

> Common sense dictates that any requests for discovery must be made in sufficient time to allow the opposing party to respond before the termination of discovery. Fed.R.Civ.P. 33(a) allows a party 30 days after service of interrogatories to serve answers of objections. . . . When the court sets a date for the termination of discovery, the parties should heed the logical import of such a deadline: the parties should complete discovery on or before that date and will not receive the benefit of court supervision of discovery which is to occur after that date. The defendant has presented no special circumstances that justify an exception to that rule in this case.
>
> **Northern Indiana Public Service Co. v. Colorado Westmoreland, Inc.**, 112 F.R.D. 423, 424 (N.D. Ind. 1986)

See also **Nowakowski v. Rounders Stadium Grill**, 2008 WL 5273814 (N.D. Ind. Dec. 18, 2008)(reiterating same).

Rodriguez failed to pursue discovery in her case within the court ordered time frame. Despite allegations that Trump is thwarting legitimate discovery requests, discovery in this matter was closed in the summer of 2004, and no motion to extend or reopen discovery has been filed. The court will not require third parties to respond to the untimely discovery requests or subpoenas, and therefore, the Motion to Compel is **DENIED.** Because the third party was justified in its refusal to comply with the subpoenas, no discussion of contempt is necessary. Likewise, Rodriguez neither requests nor offers justification for reopening discovery in this matter, barring the court's consideration of that alternative motion suggested in the motion's title.

As to Trump's summary judgment motion pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986); *Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 310 (7th Cir. 2007); *Treadwell v. Office of the Illinois Secretary of State*, 455 F.3d 778, 781 (7th Cir. 2006); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence v. Kenosha*

*County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994). *See also Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of

> fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

See also ***Scott v. Harris***, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); ***Celotex Corp.***, 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); ***Schuster v. Lucent Technologies, Inc.***, 327 F.3d 569, 573 (7th Cir. 2003).

The Jones Act provides a cause of action based on negligence for any seaman injured in the course of his employment:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.
>
> 46 U.S.C. §688(a)

See also *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 115 S.Ct. 2172, 2183, 132 L.Ed.2d 314 (1995); *Martin v. Harris*, 560 F.3d 210, 216 (4th Cir. 2009). Courts employ a three-part test for a Jones Act case: first, the plaintiff must establish that he was a seaman; second, the plaintiff must show that he was acting within the scope of employment at the time he was injured; and finally a plaintiff must show that the defendant, or one of its agents, played a part in the plaintiff's injury. *Lepard v. American River Transportation Co.*, 287 F.Supp.2d 924, 927 (S.D. Ill. 2003)(*citing Perkins v. American Electric Power Fuel Supply*, 246 F.3d 593, 598 (6th Cir. 1989)).

The Jones Act, like the doctrines of maintenance and cure and unseaworthiness, limits relief to one who is a "seaman" at the time of injury. 46 U.S.C. §30104; *Ford v. Argosy Casino Lawrenceburg*, 2008 WL 817113, *3 (S.D. Ind. March 24, 2008). To prove seaman status under the Jones Act, Rodriguez must show that both (1) her duties contributed to the function of the "vessel in navigation" or to the accomplishment of that vessel's mission, and (2) that she had a substantial employment-related connection to a "vessel in navigation." *Ford*, 2008 WL 817113 at *3. To qualify as a "vessel in navigation," a craft need not be actively or primarily used in transportation. *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 496, 125 S.Ct. 1118, 1128, 160 L.Ed.2d 932 (2005). Any docked, anchored, or moored ship may be set loose and sailed, so the key question is "whether the water craft's use 'as a means of transportation on water' is a practi-

cal possibility or merely a theoretical one." *Stewart*, 543 U.S. at 496, 126 S.Ct. at 1128 (quoting *Chandris*, 515 U.S. at 373, 115 S.Ct. at 2192). Summary judgment on the question of seaman status and the necessary subsidiary question of "vessel in navigation" is generally a mixed question of facts and law reserved for a jury and must be granted only where the facts and law reasonably support only one conclusion. *Ford*, 2008 WL 817113 at *3 (citing *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800 (1997)).

To fit the definition of a seaman, the initial inquiry is whether the Trump gambling boat was a "vessel in navigation" at the time of Rodriguez's injury. Although the boat now is permanently moored, at the time of the incident in 2001, Indiana law required the boat to navigate the waters of Lake Michigan, albeit traveling a minimal distance. The bill passed by the Indiana legislature to allow dockside gambling did not moor the Trump Casino boat permanently until 2002. *See* Indiana Code §4-33-6-21; §4-33-2-7.5; and Indiana Gaming Commission Resolution 2002-16, effective July 29, 2002. In its brief on *Howard*, Trump acknowledges that the vessel qualifies as a vessel in navigation, and the court agrees. *Cf. Howard*, 364 F.3d at 857 ("Today we hold that an indefinitely moored dockside casino with no transportation function or purpose is not a vessel 'in navigation.'"); *Watson v. Indiana Gaming Co.*, 337 F.Supp.2d 951, 955 (E.D.Ky. 2004) (concluding that card dealer was not a "seaman" and could not recover on maritime personal injury theories because river-

boat casino was an indefinitely moored riverboat casino which was not a "vessel in navigation."). On or about Memorial Day 2001, the date of Rodriguez's injury, the Trump Casino was a "vessel in navigation."

Regarding Rodriguez's duties as a dealer and whether these duties contributed to the function of and gave her a substantial employment-related connection to the Trump vessel:

> [T]he undisputed facts show that gaming was the primary function or mission of the [casino boat] at the time of the incident. It is also undisputed that Ford's duties as a slot technician gave him a substantial employment-related connection to the [gaming boat] and contributed to the gaming mission of the casino.
>
> *Ford*, 2008 WL 817113 at *4

In precisely the same fashion, Rodriguez's work as a dealer contributed to the function or mission of the Trump Casino vessel and gave her a substantial employment-related connection to the gaming boat. At the very least, these employment questions, viewed in a light most favorable to the non-moving party, create a disputed fact that is appropriately determined by a jury. *See Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1104 (7th Cir. 2004)(Posner, J.)(discussing the classification of a seaman under the various statutes and admiralty doctrines).

With respect to whether Rodriguez was acting within the scope of her employment, Trump points out that Rodriguez had punched out, exited the vessel, and was socializing, not working for the benefit of Trump, in the land-based facility. Rodriguez

counters that Trump Casino employees were provided a free meal in the cafeteria, and the land-based cafeteria was the sole location for employees to eat, drink, or smoke during breaks, and the location to meet the shuttle bus to the employee parking lot.

Under the Federal Employers' Liability Act, 45 U.S.C. §51 *et seq.*, "[i]t would violate the notions of fair play for the railroad to encourage its employees to lodge at a particular establishment and then escape liability for injuries suffered by its workers as a result of the poor quality of the facilities it encouraged them to use." ***Empey v. Grand Trunk Western R. Co.***, 869 F.2d 293, 295 (6th Cir. 1989). This concept has been equated to similar treatment of shipowner employers under the Jones Act in evaluating injuries in the course or scope of employment. *See, e.g.,* ***Rannals v. Diamond Jo Casino***, 265 F.3d 442, 447 (6th Cir. 2001)(applying reasoning from ***Empey*** to injury of deckhand for a riverboat casino). In ***Rannals***, the riverboat casino deckhand from Dubuque, Iowa, was required by the casino to attend a training program in Toledo, Ohio. While at the program, the plaintiff slipped on a patch of ice in the driveway of the training center, fracturing an ankle. Analyzing liability under the Jones Act, the Sixth Circuit held that a genuine issue of material fact existed regarding whether Rannals' attendance and participation in the training program was in the course of her employment, especially because the employees were encouraged to attend, were paid regular wages while there, and still were under

the casino's supervision while attending. *Rannals*, 265 F.3d at 449.

Similarly, Trump cannot provide a sole designated location for taking breaks, having a beverage, smoking, eating meals, and awaiting the required parking lot shuttle service, and encourage employees to use that location by offering a free meal pass, but then refuse to acknowledge that such are terms of employment. Rodriguez has raised a genuine issue of material fact in regards to whether she was acting in the scope of her employment after she punched out and stopped in the employee cafeteria and had a soda while awaiting the next shuttle bus to the employee parking lot.

The Jones Act incorporates the standards of FELA, which renders an employer liable for the injuries negligently inflicted on its employees by its officers, agents, or employees. Federal Employers Liability Act, 45 U.S.C. §51 *et seq.*; Jones Act, 46 U.S.C. §688; **Hopson v. Texaco, Inc.**, 383 U.S. 262, 263, 86 S.Ct. 765, 766, 15 L.Ed.2d 740 (1966). "An 'agent' for purposes of FELA has a wide meaning. Thus, when a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of §1 of FELA." **Austin v. Soo Line Railroad Co.**, 1996 WL 539123, *3 (N.D. Ill. Sept. 20, 1996)(*quoting* and *citing* **Sinkler v. Missouri Pacific Railroad Co.**, 356 U.S. 326, 331-32, 78 S.Ct. 758, 763, 2 L.Ed. 87 (1958)).

Although Trump argues that Buffington Harbor LLC is, by definition, a separate legal entity and therefore unrelated to the defendant, the question of whether Buffington Harbor was acting as an agent of Trump remains unanswered. Again, the *Rannals* case provides comparable facts. Although the deckhand in *Rannals* was several states away from the employer casino boat, the Sixth Circuit reversed the district court's grant of summary judgment, finding that the plaintiff successfully created a genuine issue of material fact regarding whether negligence by the training center in failing to clean the icy walkways could be imputed to the Iowa casino. 265 F.3d at 450. "As the Supreme Court and this circuit have recognized, a third party's negligence in providing a safe workplace for an employer's workers may be imputed to the employer where that third party has a contractual relationship with the employer and the employee is acting in the course of her employment on the third party's premises." *Rannals*, 265 F.3d at 450 (*citing* *Hopson*, 383 U.S. at 264, 86 S.Ct. at 765; *Sinkler*, 356 U.S. at 332-32, 78 S.Ct. at 763).

The contractual relationship that existed in *Rannals* is comparable to the apparent contractual relationship between Trump and Buffington Harbor. That Trump required meals and breaks to take place in the cafeteria, arranged for the employee shuttle bus to pick up employees at the cafeteria, and provided employees a free meal at the cafeteria suggest a contractual relationship between the two entities. Although it is uncertain from the facts before the court at this time the extent of this relation-

15

ship, the few available facts create a genuine issue of material fact similar to that in *Rannals*, precluding summary judgment on this point of law.

Proof of negligence, duty, and breach is essential to recovery under the Jones Act, and the employer's conduct is reviewed under the ordinary prudence standard normally applicable in negligence cases. 46 U.S.C. §688; *Rannals*, 265 F.3d at 447. In addition, the Jones Act generally strips employers of any common law defenses, expanding protections for seamen and preventing results which could affect seamen harshly. *Rannals*, 265 F.3d at 448 (*quoting* and *citing* *Socony-Vacuum Oil Co. v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939); *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). "Under the negligence analysis, a plaintiff must show that her employer failed to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known and that such failure caused the plaintiff's injuries and damages." *Rannals*, 265 F.3d at 449 (*citing* *Perkins*, 246 F.3d at 599 ("It is a fundamental principle that, under the Jones Act, an employer 'must have notice and the opportunity to correct an unsafe condition before liability will attach.'")). The plaintiff must show "actual or constructive notice to the employer of the defective condition that caused the injury." *Rannals*, 265 F.3d at 450 (*quoting* *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2nd Cir. 1993)).

16

Trump argues that it could not possibly have had notice of the unclean or dangerous condition, if any, in the cafeteria owned and run by Buffington Harbor.  However, Trump misses the point of imputation of negligence by an agent.  If Buffington Harbor was an agent of Trump, any actual or constructive notice to Buffington Harbor or its cafeteria employees may be imputed to Trump.  Just as the Ohio training center's negligence in failing to cure dangerous icy conditions at its facility did not remove liability from the Iowa casino that employed Rannals, Trump may not shift its own liability from itself to an agent that Trump delegated and relied upon to carry out contractual employee activities.  Likewise, the *Rannals* genuine issue of whether constructive notice of icy conditions at the Ohio training center could be imputed to the Iowa casino parallels the facts here. There exists a genuine issue, especially due to the lack of discovery involving the employees at the cafeteria, as to the question of notice given the Jones Act's dictate of liability if "negligence of the employer *played any part, however small*, in the injury." *Rogers*, 352 U.S. at 507-08, 77 S.Ct. at 449. Because there is no way to determine from the facts before the court whether Buffington Harbor or any of its employees had notice of the floor's condition, the court cannot grant summary judgment on the issue of notice.

Viewing the facts of this case in the light most favorable to Rodriguez, the nonmoving party, there are unresolved questions of material fact which preclude the entry of summary judgment for

Trump. The question of whether Rodriguez was in the course of her employment at the time of the accident, whether Buffington Harbor was an agent of Trump, and whether notice to Buffington Harbor could be imputed to Trump are all genuine issues which require a jury's involvement. The motion for summary judgment as to the issue of liability under the Jones Act is **DENIED**.

In addition, Rodriguez added her claim for maintenance and cure when she amended her complaint in August 2008. Because the amended pleading was filed after the stay was lifted, this claim had not been briefed by the parties in the original briefing for the defendant's motion for summary judgment. After the stay was lifted and the Second Amended Complaint was docketed, the court invited the parties to supplement their briefings, but Trump declined the opportunity to address the added charge under maintenance and cure.

Under the general maritime law, a seaman is entitled to maintenance and cure at the expense of the vessel. *Martin*, 560 F.3d at 221. The remedy is defined:

> Maintenance is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery. In particular, maintenance is the living allowance for a seaman while he is ashore recovering from injury or illness, however, it is not a substitute for wages. Cure is payment of medical expenses incurred in treating the seaman's injury or illness. The injured seaman bears the burden of establishing that he is eligible for maintenance and cure. (internal citations and quotations omitted)

*Delaware River & Bay Authority v. Kopacz*, 574 F.Supp.2d 438, 443 (D. Del. 2008)

The common law remedy is comprised of three elements: (1) a living allowance during the recovery period, (2) reimbursement for medical expenses, and (3) unearned wages for a limited period of time. *Padilla v. Maersk Line, Ltd.*, 603 F.Supp.2d 616, 623 (S.D.N.Y. 2009)(*citing* *Gardiner v. Sea-Land Serv., Inc.*, 786 F.2d 943, 946 (9th Cir. 1986)). The obligation of the shipowner to provide this remedy lasts until the point of maximum attainable medical cure. *Martin*, 560 F.3d at 221; *Padilla*, 603 F.Supp.2d at 623. "The seaman bears the burden of proving his or her right to maintenance and cure." *Padilla*, 603 F.Supp.2d at 624 (*citing* *Seri v. Queen of Hearts Cruises, Inc.*, 2003 WL 21835736, at *1 (S.D.N.Y. Aug. 6, 2003)).

Because the various obligations and defenses of maintenance and cure have not been addressed by the parties, the court will not address them on its own, and thus, Rodriguez's claim for maintenance and cure also survives summary judgment.

As to Rodriguez's claim for unseaworthiness, Trump argues that such a claim cannot extend to accidents that do not occur on a vessel, and the plaintiff in her response agrees. *See, e.g.*, *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 211, 92 S.Ct. 418, 424, 30 L.Ed.2d 383 (1971)("The Court has never approved an unseaworthiness recovery for an injury sustained on land merely because the injured longshoreman was engaged in the process of loading or unloading.")(internal quotations omitted). Because

19

Rodriguez does not contest summary judgment on the issue of seaworthiness, the court **GRANTS IN PART** the defendant's Motion for Summary Judgment, and the claim of unseaworthiness is **DISMISSED WITH PREJUDICE.**

_____

For the foregoing reasons, Motion for Summary Judgment [DE 36] filed by the defendant, Trump Casino, on April 6, 2004, is **GRANTED IN PART** and **DENIED IN PART;** the Third Motion for Extension of Time in Which to File a Sur-Response to Defendant's Motion for Summary Judgment [DE 63] filed by the plaintiff, Catherine Rodriguez, on October 29, 2004, is **DENIED AS MOOT;** and the Motion to Compel and/or Show Cause Why Deponent Should Not be Held in Contempt of Court and Extend Discovery [DE 84] filed by the plaintiff on November 10, 2008, is **DENIED.**

ENTERED this 29th day of July, 2009

                                              s/ ANDREW P. RODOVICH
                                                United States Magistrate Judge