UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CATHERINE RODRIGUEZ, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>TRUMP CASINO and/or TRUMP )<br>INDIANA, INC., )<br>)<br>Defendants ) | Case No. 2:02 cv 254 |

## OPINION AND ORDER

This matter is before the court on the Motion to Reconsider [DE 90] filed by the defendant, Trump Casino, on August 11, 2009, and the Motion for Summary Judgment [DE 110] filed by the plaintiff, Catherine Rodriguez, on November 17, 2010. For the following reasons, the Motion to Reconsider [DE 90] is DENIED, and the Motion for Summary Judgment [DE 110] is DENIED.

### Background

This case arises from an injury incurred by Catherine Rodriguez, a dealer on a gaming boat owned by the defendant, Trump Casino, as she was walking through the cafeteria provided for employee use on or about Memorial Day 2001. The cafeteria is located in a land-based pavilion between the Trump vessel and the Majestic Star Casino, another gaming vessel, and is cleaned, decorated, and managed by Buffington Harbor LLC. The Trump Casino offered its employees free meals and beverages in the

cafeteria, as well as free parking and shuttle service from the cafeteria pavilion to the parking lot.

Rodriguez had ended her shift on the day of the injury and had gone to the cafeteria to catch the shuttle bus to the employee parking lot. She decided to have a drink and a cigarette there while awaiting the bus, and when she got up to cross the cafeteria to throw her cup away, she fell. Rodriguez described the fall as originating from something sticky or tacky on a floor mat which caused her to twist her ankle and fall over. Upon her first attempt to stand, Rodriguez fell a second time because of the tacky, grimy surface underfoot.

At the time of the injury, Indiana law prohibited a casino vessel from being moored to the dock on a permanent basis. The boats at Buffington Harbor would cruise Lake Michigan for two-hour intervals whenever weather permitted, even if only a very short distance from shore. On August 1, 2002, the Indiana Gaming Commission's resolution allowing gambling on moored casino boats took effect, and the Trump Casino boat began providing dockside gaming.

Rodriguez filed her original Complaint on June 20, 2002, seeking relief under the Jones Act and the maritime personal injury doctrines of maintenance and cure and unseaworthiness. On April 6, 2004, Trump filed a motion for summary judgment that the court granted in part and denied in part. In denying Trump's

2

motion on the Jones Act claim, the court found, in relevant part, that there was "no way to determine from the facts before the court whether Buffington Harbor or any of its employees had notice of the floor's condition." Because notice, either actual or constructive, is an essential element that Rodriguez must prove to succeed on her claim, Trump now moves the court to reconsider its Order, arguing that the court made an error of law by placing the burden of proof on the wrong party.

The Order on Trump's motion for summary judgment also held that an issue of material fact remained concerning whether Rodriguez was within the scope of her employment at the time of the incident. The court acknowledged that an employee may remain within the scope of her employment while on a third-party's property and that Trump could not "provide a sole designated location for taking breaks, having a beverage, smoking, eating meals, and awaiting the required parking lot shuttle service, and encourage employees to use that location by offering a free meal pass, but then refuse to acknowledge that such are terms of employment." Relying on the court's language, Rodriguez now moves for summary judgment on the sole issue of whether she was within the scope of her employment.

## Discussion

Although they are frequently filed, the Court of Appeals has described a motion for reconsideration as "a motion that, strict-

3

ly speaking, does not exist under the Federal Rules of Civil Procedure." Hope v. United States, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994). See also Talano v. Northwestern Medical Faculty Foundation, Inc., 273 F.3d 757, 760 n.1 (7th Cir. 2001). This type of motion "is a request that the [Court] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." Ahmed v. Ashcroft, 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted). See also United States v. Ligas, 549 F.3d 497, 501 (7th Cir. 2008)("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it."). In Frietsch v. Refco, Inc., 56 F.3d 825 (7th Cir. 1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

> 56 F.3d at 828

See also Oto v. Metropolitan Life Insurance Company, 224 F.3d 601, 606 (7th Cir. 2000)("A party may not use a motion for recon-

4

sideration to introduce new evidence that could have been presented earlier."); Divane v. Krull Electric Company, 194 F.3d 845, 850 (7th Cir. 1999); LB Credit Corporation v. Resolution Trust Corporation, 49 F.3d 1263, 1267 (7th Cir. 1995). Ultimately, a motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Global View Ltd. Venture Capital v. Great Central Basin Exploration, 288 F.Supp.2d 482, 483 (S.D.N.Y. 2003)(internal quotation omitted).

Trump moves the court to reconsider its July 29, 2010 Order denying in part its motion for summary judgment. Trump argues that the Order contains an error of law because the court placed the burden of proof on the wrong party for the purpose of establishing whether Trump had notice of the floor's dangerous condition. Trump pointed to the lack of evidence tending to show that it had notice of the conditions at Buffington Harbor in its motion for summary judgment, and Rodriguez submitted the testimony of Michael Todd Yost, William Hollemann, and herself concerning the conditions of Buffington Harbor in response. Considering both parties' positions, the court denied Trump's motion for summary judgment, finding that "[b]ecause there is no way to determine from the facts before the court whether Buffington Harbor or any of its employees had notice of the floor's condi

tion, the court cannot grant summary judgment on the issue of notice." (Op and Ord. July 29, 2009, p. 17)

A defendant moving for summary judgment can point to a deficiency in the plaintiff's case. If by doing this the defendant establishes that no factual dispute exists, the burden shifts to the plaintiff to show that there is a genuine issue of material fact for the trier of fact to resolve. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must determine whether the evidence the plaintiff submits in response is sufficient to withstand summary judgment. To determine the sufficiency of the evidence submitted by the plaintiff, the court inquires into whether the evidence presented by the plaintiff is such that a reasonable jury might find in favor of the plaintiff after a trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). If answered in the affirmative, summary judgment must be denied because a genuine issue of material fact exists. Anderson, 477 U.S. at 250, 106 S.Ct. at 2511.

Trump argues that the court found that Rodriguez failed to meet her burden to create a genuine issue of material fact that Trump had actual or constructive notice because the court stated that there was no way to determine if Trump had notice of the conditions at Buffington Harbor from the evidence submitted. However, Trump misconstrues the court's explanation. The court

was not holding that the record was devoid of evidence to support Rodriguez's position that Trump had constructive notice of the condition. Rather, the court was stating that it could not determine as a matter of law from the facts before it whether Trump did or did not receive notice. Put another way, the court was stating that a genuine issue of material fact existed. Rodriguez submitted the testimony of Yost, Hollemann, and herself concerning the conditions of Buffington Harbor and its consistent failure to clean the floor as proof that Trump received notice. Because notice can be established by showing a pattern or practice of leaving dangerous conditions unattended to, the record contains conflicting evidence on the issue of whether Trump received notice, and summary judgment is inappropriate. See Culli v. Marathon Petroleum Co., 862 F.2d 119, 126 (7th Cir. 1988). Therefore, Trump's motion to reconsider is DENIED.

Turning now to Rodriguez's motion for summary judgment, Rodriguez claims that she was in the course of her employment at the time of the incident, one of the elements she needs to prove to succeed on her claim under the Jones Act. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2548; Stephens v. Erickson, 569 F.3d 779, 786 (7th Cir. 2009).

The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Company, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Stephens, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Stephens, 569 F.3d at 786; Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. Ashman v. Barrows, 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. Wheeler, 539 F.3d at 634 (citing Anderson, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson, 477 U.S. at 250, 106 S.Ct. at 2511

See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); Celotex Corp., 477 U.S. at 322-23, 106 S.Ct. at 2553; Stephens, 569 F.3d at 786; Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); Springer v. Durflinger, 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

The Jones Act provides a cause of action based on negligence for any seaman injured in the course of his employment, providing:

> Any seaman who shall suffer personal injury in the course of his employment may, at his

9

> election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.

46 U.S.C. §688(a) (2006)

See also Chandris, Inc. v. Latsis, 515 U.S. 347, 354, 115 S.Ct. 2172, 2183, 132 L.Ed.2d 314 (1995); Martin v. Harris, 560 F.3d 210, 216 (4th Cir. 2009). Courts employ a three-part test for a Jones Act case: first the plaintiff must establish that he was a seaman; second the plaintiff must show that he was acting within the scope of employment at the time he was injured; and finally a plaintiff must show that the defendant, or one of its agents, played a part in the plaintiff's injury. Lepard v. Amer. River Transportation Co., 287 F.Supp.2d 924, 927 (S.D. Ill. 2003)(citing Perkins v. American Elec. Power Fuel Supply, 246 F.3d 593, 598 (6th Cir. 1989)).

Rodriguez's motion addresses only the second prong of the test, whether she was within the scope of her employment. An employer has a duty to exercise reasonable care to furnish a safe work place for its employees that may extend beyond the company's premises and to property of a third party if the employer delegates and relies on the services of the third party to carry out its own duty. Carter v. Union R. Co., 438 F.2d 208, 210-11 (3rd Cir. 1971). Therefore, an employee may be in the scope of her

employment not only when she is engaged in the performance of her duties but traversing the employer's premises or that of a third-party for which the employer remains responsible. Carter, 438 F.2d at 211.

The majority of cases addressing whether the employee is within the scope of her employment when she is not on her employer's premises and is not in route to or from her place of employment have found that it is an issue best reserved for the jury. See Schneider v. National R.R. Passenger Corp., 854 F.2d 14, 17 (2nd Cir. 1988); Rannals v. Diamond Jo Casino, 265 F.3d 442, 447 (6th Cir. 2001). Although injuries that occurred on the employer's property while performing work or traversing a third party's property within a reasonable time before or after work to access an employer provided parking lot have been held as being within the course of employment as a matter of law, injuries that occur long after the employee left his place of employment or arrived at the premises create a triable question of material fact. Morris v. Pennsylvania R. Co., 187 F.2d 837, 841 (2nd Cir. 1951). When deciding whether to hold that an employee was within the scope of her employment as a matter of law, the court places emphasis on the employee's physical and temporal proximity to her work place. Schneider, 854 F.2d at 17. As the lapse of time between the employee leaving the employer's premises and the resulting injury increases, courts have been less likely to find

that the employee was within the scope of her employment as a matter of law.  Furthermore, disputes arising over the level of control the employer exercised over the location of the injury weigh against granting summary judgment.  See Schneider, 854 F.2d at 17 fn. 2.

Rodriguez was not traversing Buffington Harbor's property for the purpose of accessing the parking lot at the time she was injured, nor was she on her employer's premises fulfilling her job duties.  Rodriguez's actions were more attenuated from her employment than in the cases holding that the employee was within the scope of his employment as a matter of law.  Rodriguez had clocked out, was off of her employer's premises, and was having a drink at Buffington Harbor at the time of the incident.  While her physical and temporal proximity to her employment creates a triable issue of material fact, it does not, as a matter of law, require the court to conclude that she was within the scope of her employment.  Rather, the lapse of time and deviation from her employment creates a genuine question of material fact, and the jury must determine whether she was carrying out a necessary incident of her day's work.  Schneider, 854 F.2d at 17.

_____

For the foregoing reasons, the Motion to Reconsider [DE 90] filed by the defendant, Trump Casino, on August 11, 2009, is

DENIED, and the Motion for Summary Judgment [DE 110] filed by the plaintiff, Catherine Rodriguez, on November 17, 2010, is DENIED.

ENTERED this 4th day of February, 2011

                                              s/ Andrew P. Rodovich
                                                United States Magistrate Judge